UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |  |
|---|---|---|
| PENN-DANIELS, LLC., | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 07-1282 |
| WILLIAM D. DANIELS, NANCY JANE DANIELS, AND DAVID P. DANIELS, | ) | |
| Defendants. | ) | |

# O R D E R

This matter is before the Court on Plaintiff's Motion for Reconsideration of the portion of the Court's Order granting summary judgment sua sponte in favor of Defendants on the claim to compel specific performance under the applicable agreements. For the reasons set forth below, the Motion [#29] is GRANTED IN PART and DENIED IN PART.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the parties are of diverse citizenship and the amount in controversy exceeds $75,000.00.

## BACKGROUND

Plaintiff, Penn-Daniels, LLC, ("P-D") is a Delaware limited liability company and successor in interest to Penn-Daniels Incorporated, a Delaware corporation. Defendants William D. Daniels, Nancy Jane Daniels, and David P. Daniels (collectively referred to as the "Daniels") own the property located at 888 S. Lake Storey Road, Galesburg, Illinois (the "Property"). William Daniels is the agent and manager of the Property. In 1997, ShopKo acquired P-D from Defendants, and since then, P-D has been a subsidiary of ShopKo.

On December 18, 1997, P-D and the Daniels entered into an Amended and Restated Lease Agreement (the "Lease"), pursuant to which P-D leased the Property from the Daniels. Section 7 of the Lease provides in relevant part:

> Tenant agrees that during the term of this Restated Lease Tenant will, at its own expense, (i) keep the Project in as reasonably safe condition as its operations shall permit and (ii) keep all buildings and other improvements forming a part of the Project in good repair and in good operating condition, making from time to time all necessary repairs thereto and renewals and replacements thereof. . . .

The procedure for giving notice of an event of default by P-D as a result of a failure to fulfill any condition of the Lease is set forth in Section 13. Section 22 of the Lease grants P-D the right to exercise an option to purchase the Property.

> Unless there is then existing an uncured event of default by Tenant, in which case, Tenant shall have no right or option to purchase the Project as described herein, on . . . January 1, 2007 . . . or at the end of the Term of this Restated Lease, Tenant shall have the option to purchase from Landlords the Project herein demised, with the purchase price thereof to be the fair market value of the Project's real estate, buildings and improvements thereon . . . The option on the part of the Tenant shall be exercised by the Tenant giving Landlords written notice of the exercise of such option within thirty (30) days of the applicable January 1 or the terminating event, as the case may be. . . .

P-D has not operated a store on the premises of the Property since 2001. During 2005, P-D advised the Daniels that it was interested in exercising its purchase option during the course of negotiations attempting to obtain an early exit from the Lease.

On November 16, 2006, the Daniels sent P-D a letter advising of maintenance and repair conditions that they believed to constitute a default under the terms of the Lease. P-D gave proper notice to the Daniels of its intent to purchase the Property by letter dated January 3, 2007. On January 10, 2007, the Daniels sent a letter to P-D asserting that it

was in default under the terms of the Lease and refusing the attempt to exercise the purchase option. This action followed, with P-D asking the Court to order specific performance under the Lease, namely that the Daniels be compelled to accept and honor P-D's attempt to exercise its purchase option pursuant to § 22 of the Lease.

P-D moved for the entry of summary judgment and the Daniels responded. In resolving the Motion, the Court concluded that no reasonable jury could find in favor of P-D on the question of whether there was an uncured event of default under the lease. The portion of P-D's Motion seeking summary judgment on its claim for specific performance was denied, and judgment was entered in favor of the Daniels on that claim. The portion of P-D's Motion seeking summary judgment on the Daniels' counterclaim for damages resulted in the dismissal of the counterclaim as premature. P-D now seeks reconsideration of the portion of the Court's ruling addressing its claim for specific performance. The matter is fully briefed, and this Order follows.

## DISCUSSION

"Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." <u>Caisse Nationale de Credit v. CBI Industries</u>, 90 F.3d 1264, 1269 (7th Cir. 1996). Furthermore, it is not appropriate to argue matters that could have been raised in prior motions or rehash previously rejected arguments in a motion to reconsider. <u>Id.</u> at 1270.

It was undisputed that P-D's right to exercise its purchase option is contingent on there being no existing uncured "event of default" at the time that P-D had to exercise its option by providing written notice to the Daniels within 30 days of January 1, 2007. Section

13 of the Lease defines what constitutes an "event of default" by P-D. The pertinent portion of this section for purposes of this suit is § 13(b), which provides in relevant part:

> Failure by Tenant to observe and perform any covenant, condition or agreement in this Restated Lease on the part of Tenant to be observed or performed, other than as referred to in Subsection (a) of this Section, for a period of thirty (30) days after written notice specifying such failure and requesting that it be remedied, given to Tenant by Landlords . . . .

The Daniels argued that P-D's attempt to exercise its purchase option was ineffective, as P-D was not in compliance with the Lease as a result of its failure to keep the property in good condition and repair. On the record at summary judgment, the Court found that the undisputed facts supported the Daniels' position and entered judgment in their favor. P-D now takes issue with the Court's ruling. P-D specifically challenges the Court's finding that it was undisputed that the alleged default remained unremediated for more than 30 days after the notice, thereby becoming an uncured "event of default" under § 13 of the Lease, as well as the finding that the uncured "event of default" was clearly in existence at the time that P-D issued its only timely attempt to exercise its purchase option on January 3, 2007. The Court also noted that P-D had not produced any evidence contradicting the assessments of the condition of the Property by the Daniels' consultants or otherwise established that they were not in violation of their obligation under § 7 of the Lease to keep the Property " in good repair and in good operating condition, making from time to time all necessary repairs thereto . . . ."

P-D cites to four instances in the record at summary judgment in support of its assertion that it did present a genuine issue of material fact as to whether there had been an event of default under the Lease, but this effort is belied by a review of the pleadings in this case. P-D points to two hearsay statements of opinion by Gregory Polacheck,

ShopKo's Director of Real Estate, to the effect that he did not believe that P-D was in default under the Lease.  It is important to note that neither of these statements were relied on by P-D in the summary judgment briefings, as P-D chose to focus all of its efforts on its arguments that the Daniels had waived any right to object and that default had not existed for 30 days at the time it attempted to exercise its purchase option, both of which were rejected by the Court.  Nor is it the province of the Court to root through the record not unlike a pig in search of truffles to uncover any grain of evidence that might support the position of a party that chose to otherwise sit on its hands.  Casna v. City of Loves Park, 574 F.3d 420, 424 (7th Cir. 2009) ("Judges are not like pigs, hunting for truffles buried in the record"); United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991).  P-D also cites a portion of a footnote in its memorandum where it summarily states that it disputes the condition of the property but does not argue the point for purposes of summary judgment and the fact that it referenced the topic in its briefs as "supposed conditions" and "purported default."  Yet it is beyond cavil that the arguments of counsel are not evidence.

With all due respect, references to bald opinions buried in the record but not argued in the motions, use of the phrases "supposed" and "purported" in argument, and the unsupported assertion by counsel that P-D disputes the condition of the property are insufficient at the summary judgment stage, where parties must come forward with evidence indicating the existence of a genuine issue of material fact in order to survive. P-D knowingly brought a motion for summary judgment seeking to compel specific performance of the purchase option, which necessarily required a finding that there was no uncured event of default in order to entitle P-D to the relief requested.  *See* McCormick Rd. Assoc. L.P. II v. Taub, 276 Ill.App.3d 780, 783 (1st Dist. 1995) (noting that compliance

by plaintiff with the terms of the contract is an element that must be proven to obtain specific performance of a real estate contract.) Even after the Daniels introduced evidence indicating the existence of an uncured event of default, P-D chose to stick by its waiver argument and reliance on its untimely attempt to invoke its purchase option rather than affirmatively introduce evidence in support of its bald assertion that the conditions of the property were in dispute.

P-D further failed to dispute several statements of additional undisputed fact addressing this issue, instead deeming them immaterial. For example, P-D responded to the statement that it failed to comply with the Lease and repair the Property so it could get a lower price in exercising any option by dismissing it as immaterial rather than denying it and submitting evidence. (Response to ¶ 5 of Defendants' Statement of Additional Undisputed Facts) P-D similarly dismissed the Daniels' assertion that Bill Daniels began to notice deterioration on the Property in early 2005. (Response to ¶ 7 of Defendants' Statement of Additional Undisputed Facts) P-D admitted that the June 2005 inspection report "identified deficient and deferred maintenance issues on the Property." (Response to ¶ 8 of Defendants' Statement of Additional Undisputed Facts) P-D also deemed the assertions that the condition of the Property had worsened over time despite attempts to get P-D to remedy the situation and that P-D had done almost nothing since the notice of default to remedy the default to be immaterial. (Response to ¶¶11 and 13 of Defendants' Statement of Additional Undisputed Facts) Furthermore, P-D deemed immaterial the fact that virtually none of the identified defaults had been cured in 2008, but rather had worsened and new maintenance issues had arisen. (Response to ¶ 16 of Defendants' Statement of Additional Undisputed Facts)

P-D argues that if the Court had given notice that it intended to reject P-D's positions and grant summary judgment in favor of the Daniels', it would have come forward with new evidence of record in the case to show that the condition of the property was acceptable and thereby alerted the Court that the condition of the Property was a genuine factual dispute. Included in this new evidence is: (1) a report from P-D's appraiser dated January 9, 2007, finding the Property in average condition with no major items of deferred maintenance observed; (2) receipts and payments for upkeep activities on the Property; (3) testimony by Polacheck and an independent broker who observed nothing with respect to the condition of the property that caused them concern in September 2006; (4) a report by another independent broker finding the property in good shape and clean in January 2007; and (5) statements from P-D's property agents' denying that Bill Daniels had complained to them about the condition of the property at the time or requested that repairs be made.

In support, P-D cites Simpson v. Merchants Recovery Bureau, Inc., 171 F.3d 546, 549 (7th Cir. 1999), and Sawyer v. United States, 831 F.2d 755, 758 (7th Cir. 1987), for the proposition that before granting summary judgment sua sponte, a court must provide a party "(1) proper notice that the district court was considering entering summary judgment and (2) a fair opportunity to present evidence in opposition to the court's entry of summary judgment." In Sawyer, the Seventh Circuit held that the court erred in granting summary judgment sua sponte where the issue relied on in doing so had not been raised by either party and the plaintiff had not been afforded a chance to present evidence on it. Id., at 759. However, the Court of Appeals also noted that "[s]ummary judgment may be granted by a district court 'for a party without a motion, when the outcome is clear, so long as the

opposing party has had an adequate opportunity to respond.'" Id., *citing* Smith v. DeBartoli, 769 F.2d 451, 452 (7th Cir. 1985).

P-D cannot reasonably claim surprise or lack of adequate opportunity to respond here, where the very issue raised by P-D in its Motion for Summary Judgment necessarily required an examination of whether there had been an uncured event of default, as well as the fact that the Daniels clearly placed the condition of the property squarely in issue by introducing evidence to that effect in arguing that an uncured event of default precluded any possibility of the specific performance requested by P-D in opposing summary judgment. P-D then had an opportunity to respond with appropriate evidence in its reply brief but chose not to do so, apparently in the hope that one of its other theories would carry the day. Accordingly, the Court finds P-D's assertion that the entry of judgment on this issue took it by surprise to be unpersuasive.

Furthermore, P-D filed its motion seeking the entry of judgment in its favor on all issues before the Court, asserting that no issues of material fact remained in dispute. The Seventh Circuit has held that when a party does so, it is "put on notice that summary judgment for either party was a possibility." Cincinnati Ins. Co. v. Leighton, 403 F.3d 879, 885 (7th Cir. 2005). Goldstein v. Fidelity and Guaranty Ins. Underwriters, Inc., 86 F.3d 749, 750-51 (7th Cir. 1996), was also relied on by P-D in support of the present motion. In Goldstein, the Seventh Circuit addressed a situation where Goldstein filed a motion for summary judgment claiming that no issues of material fact existed in the case, noting that "[b]oth parties, Goldstein in particular, were on notice that summary judgment was being considered." Id., at 750. The effort to overturn the district court's sua sponte entry of judgment in favor of the defendant after failing to make an effort to reveal issues of fact

precluding such was deemed "lawerly game-playing." Id., at 751. The Seventh Circuit further noted that although not encouraged, it was not necessarily wrong for a district court to resolve certain cases in this fashion. Id.

The same conclusion was reached in Jones, 302 F.3d at 740, where the Seventh Circuit found that the entry of summary judgment sua sponte in favor of the non-moving party remains permissible when there are no issues of material fact in dispute. *See also,* Peckmann v. Thompson, 966 F.2d 295, 297 (7th Cir. 1992); Hunger v. Leininger, 15 F.3d 664, 669 (7th Cir. 1994). Not only did P-D assert that there were no issues of material fact in bringing its own motion, it failed to respond in a way that acknowledged such an issue when the Daniels placed the condition of the property squarely on the table in their response. As such, P-D failed to adequately apprise the Court that issues of material fact were in issue that would preclude the entry of judgment in favor of the Daniels.

Jones also rejects P-D's argument that some form of specific and separate notice from the Court that it was considering the entry of judgment in favor of the Daniels sua sponte was required. 302 F.3d at 740. The Court of Appeals found that plaintiff's motion for summary judgment placed both parties on notice that summary judgment was under active consideration and that plaintiff had an opportunity to reply to the defendant's response. Id. The discussion seems to indicate that a separate notice or specific request to consider the defendant's response as a cross-motion for summary judgment is not necessary. Id.

Like these cases, the Court ultimately agreed with P-D that there were no genuine issues of material fact with respect to the condition of the property. The reality that facts P-D dismissed as immaterial were found to be material and controlling by the Court does

not change this situation, nor does the reality that P-D could have abandoned its "all or nothing" approach and introduced evidence disputing the condition of the property, as the condition of the property was clearly an issue before the Court. To do so would have forced P-D into somewhat of a Catch-22, as it would to some degree have been required to concede the non-viability of its own Motion for Summary Judgment in the process. This was P-D's strategic choice to make, and it cannot have it both ways after its strategy failed.[1]

In summary, P-D placed the condition of the property at issue when it moved for summary judgment on its claim for specific performance. Specific performance necessarily requires a finding that P-D was in compliance with the terms of the Lease, including the requirement that the Property be kept in good repair and operating condition. Yet P-D then failed to affirmatively introduce evidence that it had complied with this requirement or that the Property was in fact in good repair and operating condition in either its memorandum or reply, even in the face of Daniels' submission of evidence to the contrary. Accordingly, P-D was afforded the procedural safeguards required by the Seventh Circuit to avoid the potential dangers of sua sponte judgment and is not entitled to another bite at this apple. The Court declines to reconsider its ruling that the Daniels are entitled to judgment on the existence of an uncured event of default on the Property.

That being said, there is one portion of P-D's Motion that warrants reconsideration. P-D takes the position that even if the record supported the entry of judgment on the question of whether P-D breached its obligations under the Lease via an uncured event of

---

[1] The Court further notes P-D's failure to comply with its obligation under Local Rule 7.1(D)(3)(b) to directly address matters raised in the responsive brief with which it disagreed.

default on the Property, in order to deny it the right to exercise a purchase option, the breach must have been material or substantial. Under Illinois law, where a breach is used to justify premature termination, forfeit a lease agreement, or terminate a right to exercise a purchase option, the breach must have been material or substantial. The Wolfram Partnership, Ltd. v. LaSalle National Bank, 328 Ill.App.3d 207, 222-23, 765 N.E.2d 1012 (1st Dist. 2001), *citing* First National Bank of Evergreen Park v. Chrysler Realty Corp., 168 Ill.App.3d 784, 793, 522 N.E.2d 1298, 1303 (1st Dist. 1988). To be material, a breach must be "one of such importance that the contract would not have been entered into without it." Wolfram Partnership, 328 Ill.App.3d at 223, *citing* Galesburg Clinic Association v. West, 302 Ill.App.3d 1016, 1019, 706 N.E.2d 1035 (3rd Dist. 1999). This determination "presents 'a complicated question of fact' involving consideration of several factors." Wolfram Partnership, 328 Ill.App.3d at 223.

The issue of whether the breach was material was neither briefed nor addressed on summary judgment. Based on the detailed factual inquiry and the apparent existence of conflicting evidence that could be introduced requiring assessments of credibility, such an issue could not properly be addressed on summary judgment. Accordingly, the Court grants the Motion for Reconsideration only to the extent that the entry of final Judgment is vacated, and the Court finds that the issue of whether P-D's breach was material remains for trial.

**CONCLUSION**

For the reasons set forth herein, Plaintiff's Motion for Reconsideration [#29] is GRANTED IN PART and DENIED IN PART. The entry of Final Judgment is VACATED, and the Court's 5/26/09 Order is hereby amended to the extent necessary to reflect the

rulings contained in this Order. As a result of the Court's ruling, Defendants' Bill of Costs [#32], P-D's Bill of Costs [#37], and Defendants' Motion for Attorneys' Fees [#33] are MOOT. The Court will contact the parties in the near future to schedule what remains of this matter for final pretrial conference.

ENTERED this 28th day of January, 2010.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge